**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA
ex rel. GERALDINE J. JOHNSON,

     Plaintiffs

v.

(1) S. BLAKE KELLY, MD., and
(2) KELLY MEDICAL, P.C., d/b/a
OKLAHOMA PAIN CENTER,

     Defendants

Case No. CIV-20-00018-JD
District Judge: Hon. Jodi W. Dishman

---

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MARCH 30, 2026 SUMMARY JUDGMENT DECISION AND ORDER WITH
BRIEF IN SUPPORT**

---

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 54(b), and in the alternative Rule 59(e), Defendants S. Blake Kelly, M.D. and Kelly Medical, P.C. d/b/a Oklahoma Pain Center (collectively "Defendants") respectfully move this Court to reconsider its March 30, 2026 Order (Doc. No. 111). The Order is interlocutory, and reconsideration is warranted to correct clear error before this case proceeds to trial and damages briefing on the remaining claims. *See* Doc. No. 111 at 27 n.12 (deferring damages because "not all claims are fully resolved").

The Order rests on four legal errors: (1) it resolved contested factual inferences against the non-movant on the Government's motion; (2) it conflated a factual finding about OPC's workflow with a legal conclusion about medical necessity, without applying

1

the Tenth Circuit's multi-factor falsity framework; (3) it declined to consider Defendants' subjective-belief evidence on scienter, contrary to *SuperValu*'s unanimous holding that FCA scienter is a subjective inquiry; and (4) it departed from the holistic materiality framework of *Escobar* and *Janssen*. At minimum, the Order should be narrowed to Medicare presumptive UDT under § 3729(a)(1)(A), as the record contains no payor-specific analysis supporting summary judgment on TRICARE or FEHBP claims.

## I.    Standard Of Review

The Order is interlocutory. Federal Rule of Civil Procedure 54(b) provides that any order "that adjudicates fewer than all the claims" "may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). The standard for reconsideration under Rule 54(b) is more flexible than under Rule 59(e), but the Tenth Circuit's familiar framework still guides the analysis: reconsideration is appropriate where there is (1) an intervening change in controlling law, (2) new evidence, or (3) a need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration is appropriate "where the court has misapprehended the facts, a party's position, or the controlling law." *United States ex rel. Schroeder v. Hutchinson Reg'l Med. Ctr.*, 777 F. Supp. 3d 1256, 1285 (D. Kan. 2025) (quoting *Servants of the Paraclete*, 204 F.3d at 1012); *see also Beaty v. Kan. Athletics, Inc.*, 454 F. Supp. 3d 1096, 1099 (D. Kan. 2020) (articulating Rule 54(b) framework). District courts within this Circuit have substantial discretion to revisit interlocutory orders. *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013).

2

Defendant asks the Court to recognize three specific legal errors in the Order's application of Rule 56 and binding FCA precedent: first, the Order applied an objective rather than subjective scienter standard, contrary to the unanimous holding in *SuperValu*; second, the Order resolved contested inferences and made credibility determinations against the non-movant, contrary to the Tenth Circuit's holdings in *Forth* and *Becker*; and third, the Order treated a finding that LC-MS presumptive testing was not used to gate confirmation as the equivalent of a finding that the testing was "medically unnecessary" as a matter of law, conflating distinct concepts and exceeding what the summary judgment record can support. These are the kinds of legal errors Rule 54(b) and *Servants of the Paraclete* contemplate.

## II.    The Order Resolved Contested Inferences Against the Non-Movant, Contrary to Binding Tenth Circuit Authority

On a motion for summary judgment, the court must "view the facts and any reasonable inferences in the light most favorable to the non-moving party" and cannot "weigh the evidence or make credibility determinations." *Forth*, 85 F.4th at 1052 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A grant of summary judgment is subject to reversal where the court failed to credit evidence favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.* (citing *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam)); *see also Wise v. DeJoy*, 71 F.4th 744, 749–50 (10th Cir. 2023) (reversing grant of summary judgment for failure to draw reasonable inferences in nonmovant's favor).

The Tenth Circuit applied that principle to reverse a grant of summary judgment in *Forth*, identifying six specific pieces of record evidence from which the district court had failed to draw inferences in the non-movant's favor. *Forth*, 85 F.4th at 1059–67. The Tenth Circuit reversed on the same basis in *Becker*, where the district court "improperly weighed the evidence and failed to draw all reasonable inferences in favor of the non-moving party" when choosing between two reasonable interpretations of dashcam video. *Becker*, 709 F.3d at 1026 & n.6. Even where the underlying evidence was video footage—often considered to "speak for itself"—competing reasonable inferences require submission to a jury. *Id.*

The Order treated the Government's admitted facts about workflow structure—that screen and confirm were ordered together (Doc. No. 93 ¶¶ 72, 76), that providers received results in the same report (Doc. No. 93 ¶ 76), and that documentation of presumptive review before definitive ordering was inconsistent (Doc. No. 93 ¶ 77)—as compelling the further inference that the presumptive testing lacked clinical value and that Dr. Kelly knew it lacked clinical value. Those further inferences do not follow from the admitted facts. The same workflow facts are equally consistent with Defendants' competing inferences: that LC-MS presumptive testing produced clinically valuable quantitative information independent of any "gating" function, that providers used those results in patient care, and that Dr. Kelly subjectively believed the workflow complied with applicable requirements. Even where the underlying facts are undisputed, the Court must draw all reasonable inferences from those facts in the non-movant's favor. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The Tenth Circuit reversed a grant of summary judgment on this exact basis—

even where the district court assumed the relevant officials received all reported information—because the court failed to draw reasonable inferences from those accepted facts. *Forth*, 85 F.4th at 1059. The Order made the same errors *Forth* and *Becker* identified as reversible

### A. The Order Made Credibility Determinations Against Dr. Kelly's Affidavit on a Cross-Motion Record.

Dr. Kelly's affidavit attested that LC-MS presumptive testing produced clinically valuable information; that providers reviewed and used those results; that the workflow reflected his good-faith understanding of regulatory requirements; and that he relied on his paid compliance consultants, who advised that screen and confirm should be ordered together. The Order discounted that testimony, concluding that Dr. Kelly's affidavit "gives the impression" that providers were waiting for presumptive results before ordering definitive testing, but that "the testimony of multiple OPC employees is clear that physicians received results in the same report." Doc. No. 111 at 20.

That is a credibility determination. At summary judgment, "[i]t is not our role to assess the credibility of conflicting testimony." *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1217 (10th Cir. 2022). The Tenth Circuit has confirmed that competing denials do not change the analysis at summary judgment because the court may not assess the credibility of conflicting accounts. *Forth*, 85 F.4th at 1063 n.10 (quoting *Cruz*, 42 F.4th at 1217). The Court was required to credit Dr. Kelly's testimony for purposes of the Government's motion. The Order's own footnote acknowledging that providers "occasionally received presumptive UDT results verbally before definitive results," Doc. No. 111 at 4 n.5,

5

confirms that the workflow Dr. Kelly described was supported by the record. The Court could not reject one supported account in favor of another at summary judgment.

**B.      The Order Chose Between Competing Characterizations of Contested Documentary Evidence.**

The Order acknowledged that the Qualitative Intake Form is open to competing characterizations: the Government characterized it one way, Defendants another. Doc. No. 111 at 4 n.7. The Order then adopted the Government's characterization. *Id.* Where reasonable jurors could draw multiple inferences from a piece of evidence, the district court is "wrong to grant summary judgment" by "specifically rejecting one possible inference," because doing so "improperly weigh[s] the evidence and fail[s] to draw all reasonable inferences in favor of the non-moving party." *Becker*, 709 F.3d at 1025–26 & n.6.

The same error pervades the Order's treatment of Dr. Kelly's testimony that "screen and confirm had to go together," Doc. No. 101 at 5 (citing Kelly Dep. 76:1–77:25); the testimony of Dr. Haddad and Dr. Nguyen that LC-MS presumptive and definitive testing are "distinctly different from a scientific standpoint," Doc. No. 101 at 5 (citing Haddad Dep. 51; Nguyen Dep. 101–05); and Dr. Kelly's testimony that he relied on his paid compliance consultants, Doc. No. 101 at 6. Each of these is competent evidence supporting Defendants' competing inferences. The Court was not free to choose among them.

**C.      The Order Relied on Evidence First Introduced in the Government's Reply Brief.**

When a moving party advances new reasons and evidence in a reply in support of its motion for summary judgment, the nonmoving party must be granted an opportunity to respond, and the court may not rely on those new materials without affording the

6

nonmovant that opportunity. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998). Courts in this District have likewise held that, in pursuit of fairness and proper notice, arguments and issues first raised in reply briefs are generally excluded because the opposing party has not had an opportunity to respond. *Wooten v. Bd. of Pub. Utils.*, No. 95-2182, 1997 WL 45275, at *2 (D. Kan. Jan. 30, 1997) (quoting *Mike v. Dymon, Inc.*, No. 95-2405, 1996 WL 427761, at *2 (D. Kan. July 25, 1996)).

The Order relied on timestamp-removal evidence (exhibits 93-1, 93-15, and 93-17) that the Government introduced for the first time in its reply brief. Doc. No. 111 at 26 n.11; Doc. No. 107 at 8. Defendants had no opportunity to respond to this evidence before the Order issued. That is precisely the procedure *Beaird* prohibits. The Government also moved to strike Defendants' WPS Exhibit 4 as untimely under Rule 37(c)(1), Doc. No. 107 at 5; the Order does not appear to have ruled on that motion before drawing on a consolidated record. The Court should reconsider its reliance on these materials.

## III.    The Order Conflated a Factual Finding About Workflow with a Legal Conclusion About Medical Necessity

The Order's central liability holding rests on the proposition that, because OPC providers did not wait for presumptive UDT results before ordering definitive testing, the presumptive tests were medically unnecessary as a matter of law. Doc. No. 111 at 19 ("undoubtedly were not doing that"). That conflates two distinct concepts.

The Tenth Circuit has held that medical-necessity certifications can be "false" under the FCA, but only through a rigorous multi-factor analysis—not a single-factor test. The court reversed dismissal of an FCA claim alleging unnecessary cardiac procedures only

after identifying five specific indicia of falsity: an unusually large number of procedures, violations of both industry and hospital guidelines, objections from other physicians, audit findings of guideline violations, and the provider's knowing misrepresentation of the clinical indication. *Polukoff*, 895 F.3d at 743–44. Concerns about overbroad FCA liability should be addressed through "strict enforcement of the [FCA]'s materiality and scienter requirements," not by narrowing the definition of falsity. *Id.* at 743 (quoting *Escobar*, 579 U.S. at 194).

The Order did not apply *Polukoff*'s multi-factor framework. Instead, it reduced the falsity inquiry to a single question—whether providers used presumptive UDT results to "gate" confirmation testing—and answered it based on credibility-laden assessments of competing testimony. Under *Polukoff*'s framework, the competing evidence in this record creates at minimum a genuine dispute about whether the presumptive testing was "reasonable and necessary" under the Government's definition. That evidence includes the acknowledged scientific superiority of LC-MS testing (Doc. No. 111 at 3: "more accurate, sensitive, [and] specific"), the absence of physician objections to the workflow, the audit approvals, and Dr. Weingarten's expert opinion. Doc. No. 91 at 12–14, ¶¶ 12–14, 37, 52, 86–89. A reasonable difference of clinical opinion cannot establish FCA falsity. *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1296–1301 (11th Cir. 2019). And medical necessity is a fact-intensive question inappropriate for resolution on summary judgment. *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1117–19 (9th Cir. 2020).

A finding that presumptive testing was not used to "gate" confirmation testing is not the equivalent of a finding that the testing lacked clinical value. The Order itself recites that LC-MS presumptive testing is "more accurate, sensitive, [and] specific" than immunoassay-based testing. Doc. No. 111 at 3. Defendants' summary judgment record establishes that LC-MS presumptive testing produced quantitative results, identified specific drug metabolites and adulterants not detectable on definitive panels, and provided clinically actionable information independent of any "gating" function. Whether the workflow at OPC made optimal use of that information is a different question from whether the testing itself was medically unnecessary—and a different question still from whether Dr. Kelly *knew* the testing was unnecessary. That dispute precludes summary judgment.

**IV.     The Order Applied an Objective Scienter Standard Contrary to the Unanimous Holding in *Supervalu***

The Supreme Court unanimously held that FCA scienter "refers to [defendants'] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *SuperValu*, 598 U.S. at 749. The opinion is unequivocal: "What matters for an FCA case is whether the defendant knew the claim was false." *Id.* at 743. The FCA's scienter standards "focus primarily on what respondents thought and believed." *Id.* at 751.

The Order is in direct tension with that holding. The Order states that "the Court does not consider Defendants' summary judgment evidence of 'Dr. Kelly's genuine attempt to follow proper procedures and lack of intent to defraud.'" Doc. No. 111 at 18. The Order further holds that "the summary judgment evidence Defendants cite regarding

the confusing nature of GHBP regulations is not relevant." Doc. No. 111 at 25. Under *SuperValu*, that evidence is not just relevant—it is at the heart of the scienter inquiry.

Scienter under 31 U.S.C. § 3729(b)(1)(A) is established by showing (1) actual knowledge that the claim was false, (2) deliberate ignorance—awareness of a substantial risk of falsity coupled with intentional avoidance of the truth, or (3) reckless disregard—conscious awareness of a substantial and unjustifiable risk of falsity. *SuperValu*, 598 U.S. at 750–51. Each prong is subjective. *Id.* at 751. A defendant's subjective good-faith belief that his claims were accurate, supported by evidence of confusion about regulatory requirements, defeats scienter even where the Court, applying its own interpretation of those regulations, concludes the claims were objectively false.

The summary judgment record contains substantial evidence of both subjective good faith and objective regulatory confusion. WPS, the TRICARE contractor, did not permit direct-to-definitive billing during the entire 2012–2024 period. Doc. No. 101 at 6. The September 9, 2014 letter from Novitas, the Medicare contractor, is itself confusing and arguably contradicts LCD 35006 as the Order interprets it. Doc. No. 101 at 9–11. The Government's own Complaint in Intervention contradicts the LCD 35006 theory the Order accepts. Doc. No. 27 ¶ 67; Doc. No. 101 at 11. Dr. Kelly's paid compliance consultants advised that screen and confirm should be ordered together. Doc. No. 101 at 6. And the 2014, 2015, 2018, and 2020 Novitas audits—including a 2018 audit that approved 40 claims involving 80 services "as billed"—provide substantial evidence that Dr. Kelly subjectively believed his billing complied with applicable requirements. Doc. No. 91 at 21–23.

Evidence of government acquiescence in particular billing practices supports an inference that the defendant subjectively believed his conduct was lawful. *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 951–53 (10th Cir. 2008). Courts within this Circuit have granted summary judgment *to defendants* on scienter where government auditors reviewed the defendant's practices and did not object. *See United States ex rel. Tate v. Honeywell, Inc.*, No. CIV 96-0098, 2002 WL 35649591, at *3–4 (D.N.M. Oct. 17, 2002) (Kelly, J., sitting by designation) (granting summary judgment to defendant where government auditors "did not take exception" to challenged classification, defendant "openly submitted this classification to the government," and even relator's expert conceded "reasonable experts could disagree"). If open presentation to government auditors and their acquiescence defeats scienter as a matter of law in *Tate*, it certainly creates a genuine dispute here—where Novitas audited Dr. Kelly's claims in 2014, 2015, 2018, and 2020, including a 2018 audit that approved 40 claims for 80 services "as billed." Doc. No. 91 at 21–23. The Order's refusal to consider that evidence as "not relevant" cannot be reconciled with *SuperValu* or *Burlbaw*.

Post-*SuperValu* decisions confirm that subjective-belief evidence creates triable disputes on scienter. One court applied *SuperValu* to deny summary judgment on FCA scienter even though it had already granted summary judgment to the relator on falsity— finding the claims were objectively false as a matter of law—because the defendant's subjective belief "that the standards . . . were met and that the claims were properly submitted" created a genuine dispute that "cannot be decided on summary judgment." *United States ex rel. Edalati v. Sabharwal*, No. 2:17-cv-02395, 2023 WL 5334621, at *11

11

(D. Kan. Aug. 18, 2023). Another court denied summary judgment on FCA scienter because the defendant consulted counsel, sought expert advice, and passed audits, creating a genuine dispute as to subjective belief, holding that "the mental state under which a party acted is generally squarely within the province of the jury." *United States ex rel. Brooks v. Stevens-Henager Coll.*, No. 2:15-cv-00119, 2024 WL 2857885, at *7 (D. Utah Mar. 29, 2024).

The proper approach is illustrated by the court's decision in *Schroeder*. Faced with conflicting testimony about what the defendant knew and believed regarding alleged FCA/Anti-Kickback Statute violations, the court refused to grant summary judgment because doing so would require "weigh[ing] the evidence at summary judgment, a posture [the court] diligently must avoid." *Schroeder*, 777 F. Supp. 3d at 1272. The court applied *SuperValu*'s subjective scienter standard to a comparable record of competing testimony about good faith and knowledge and held that the resulting fact disputes precluded summary judgment. The same result is required here.

## V.      The Order's Materiality Analysis Departs From *Escobar* and *Janssen*

The Supreme Court rejected mechanical materiality tests and adopted a 'holistic' approach in which a regulation's status as a "condition of payment" is "relevant but not automatically dispositive." *Escobar*, 579 U.S. at 194. Continued payment by the government with knowledge of the alleged violation constitutes "strong evidence" that the requirement is *not* material. *Id.* at 195. The Tenth Circuit has applied *Escobar*'s holistic test and has consistently enforced its demanding materiality standard. *Janssen*, 949 F.3d at 541–43; *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, 48 F.4th 1146,

1151–52 (10th Cir. 2022) (affirming dismissal where relator failed to allege facts beyond condition-of-payment designation, including how the government handles similar violations and whether the government continued contractual arrangements despite knowledge of alleged noncompliance).

The Order's materiality analysis departs from these standards in three respects. *First*, the Order relies on the dollar volume of the claims at issue—approximately $2 million—as a materiality factor. Doc. No. 111 at 23–24. Dollar volume is not among the considerations *Escobar* identified; the relevant question is whether the alleged misrepresentation "goes to the very essence of the bargain." *Escobar*, 579 U.S. at 193 n.5. Volume cannot substitute for that inquiry. *Second*, the Order treats the LCD's language designating presumptive UDT documentation requirements as a payment condition as effectively dispositive on materiality. Condition-of-payment status is "relevant but not automatically dispositive." *Id.* at 194. The mere fact that the Government "designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment" is not enough, standing alone, to render a misrepresentation material. *Sorenson*, 48 F.4th at 1151–52 (quoting *Escobar*, 579 U.S. at 194).

*Third*, the Order's reasoning suffers from circularity. The Order treats Dr. Kelly's alleged concealment as evidence of materiality and then treats the absence of government action as immaterial because the alleged conduct was concealed. That reasoning collapses the materiality inquiry into the falsity inquiry and forecloses any defendant from invoking *Escobar*'s continued-payment factor. The summary judgment record shows multiple Novitas audits during the relevant period, including the 2018 audit that approved 40 claims

13

for 80 services "as billed." Doc. No. 91 at 21–23. Continued payment with knowledge of the practices at issue is *Escobar*'s paradigm of immateriality. The government's continued payments despite knowledge of the relator's allegations constitutes "some evidence against plaintiff's claim of materiality." *United States ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256, 2018 WL 4748345, at *8 (D. Kan. Oct. 2, 2018), *aff'd sub nom. Janssen*, 949 F.3d 533. Courts within this Circuit have denied both parties' summary judgment motions on materiality where "reasonable minds could differ" under *Escobar*'s holistic analysis and no single factor was dispositive. *United States ex rel. Brooks v. Stevens-Henager Coll.*, 2024 WL 2857885, at *12–13 (D. Utah Mar. 29, 2024).

## VI.    At Minimum, the Order Must be Narrowed to Address Only Medicare Presumptive UDT

The Order's analysis is centered on Novitas (the Medicare contractor) and on Medicare LCD 35006. The summary judgment record, however, shows that Defendants billed multiple payors—Medicare, TRICARE (administered by WPS), and FEHBP—and that those payors had different requirements. WPS did not permit direct-to-definitive billing during the relevant period; on the Government's own theory, that payor *required* the very workflow the Order condemns. Doc. No. 101 at 6. There is no record analysis supporting summary judgment on TRICARE or FEHBP claims. At minimum, any liability ruling should be limited to Medicare presumptive UDT under § 3729(a)(1)(A). Sweeping non-Medicare claims into the Order without payor-specific analysis is error.

## VII.   Alternatively, the Court Should Narrow the Order to Preserve the Remaining Claims And the Damages Question

14

If the Court declines to vacate the Order in full, Defendants respectfully request that the Court clarify the scope of the ruling. The Order itself acknowledges that "not all claims are fully resolved" and defers the question of damages on that basis. Doc. No. 111 at 27 n.12. Several claims remain pending: § 3729(a)(1)(B); the common-law claims for fraud, payment by mistake, and unjust enrichment; and any (a)(1)(A) claim concerning definitive UDT. Defendants request clarification that:

(1) the Order's findings of falsity, scienter, and materiality apply only to the § 3729(a)(1)(A) claim concerning Medicare presumptive UDT and are not binding on the remaining claims; (2) the Order does not foreclose Defendants from contesting falsity, scienter, or materiality on any claim other than the Medicare presumptive UDT (a)(1)(A) claim; and (3) consistent with the Order's deferral of damages, the Court will address damages only after the remaining claims are resolved or otherwise adjudicated.

## CONCLUSION

Defendants respectfully request that the Court reconsider its March 30, 2026 Order (Doc. No. 111) and vacate the portion granting summary judgment to the Government on the § 3729(a)(1)(A) claim concerning presumptive UDT. In the alternative, Defendants request that the Court narrow the Order as set forth in Section VII.

Respectfully Submitted,

Dated: April 27, 2026

<u>*s/ Ronald W. Chapman II*</u>
Ronald W. Chapman II (P73179) (pro hac vice)
THE CHAPMAN FIRM
456 E. Milwaukee Ave
Detroit, Michigan 48202
T: (346) 242-7626
ron@chapmanandassociates.com

*Attorney for S. Blake Kelly, M.D., and Kelly*
*Medical, P.C., d/b/a Oklahoma Pain Center*

16

**CERTIFICATE OF SERVICE**

I certify that on April 27, 2026, I electronically filed the foregoing document with

the Clerk of Court using the CM/ECF system, which will send a notification of such

filing (NEF) to all counsel of record.


Amanda R. Johnson – amanda.johnson3@usdoj.gov
Ron Gallegos – ron.gallegos@usdoj.gov
Kurt Rupert – krupert@hartzoglaw.com
Elizabeth Price – eprice@hartzoglaw.com
Debra A. Brooks – ann.brooks@brookslawok.com
Michael L. Brooks – michael.brooks@brookslawok.com
Anothony J. Ferate – ajferate@spencerfane.com
Maritsa A. Flaherty – mflaherty@chapmanlawgroup.com

*s/ Ronald W. Chapman II*
Ronald W. Chapman II (P73179) (pro hac vice)

17